T. R. Sammons v. Commissioner.
Sammons v. Commissioner
Docket No. 7099.
United States Tax Court
1946 Tax Ct. Memo LEXIS 211; 5 T.C.M. (CCH) 299; T.C.M. (RIA) 46094; April 23, 1946
*211 L. H. Beam, Esq., 104 Citizens Bldg., Mansfield, O., for the petitioner. W. W. Kerr, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income tax for the fiscal years ending October 31 in the years 1941 * and 1942 * and in which the Commissioner determined deficiencies of $6,777.16 and $4,283.78, respectively, all of which are in issue. The principal issue is whether the Commissioner erred in including in the gross income of the petitioner certain amounts alleged by the petitioner to be the income of his wife from a partnership composed of husband and wife. Ancillary thereto is the question whether interest received on bonds should be taxed to the wife; also, whether real estate taxes should be allowed as deduction to the petitioner, or to his wife. From evidence adduced we make the following: Findings of Fact The petitioner, a resident of Ohio, filed his Federal income tax returns for the fiscal years ended October 31, 1941, and October 31, 1942, with the collector for the 18th district of Ohio. He and his wife, Rhea V. Sammons, have *212 been married for about 29 years. They have no children. On November 9, 1922, he and one W. L. Denny formed a partnership for the purpose of purchasing an outdoor advertising business at Washington Court House, Greenfield, and Savannah, all in Ohio. Payment was, except for $4,000 down payment, to be out of the earnings of the business. On December 5, 1922, the partnership purchased another business, at Chillicothe, Lancaster, and Kingston, Ohio, for $25,000, all payable from the earnings of the business. In the same way, on February 26, 1923, by payment to be made from the business earnings, the partnership purchased another plant at Marion, Delaware, Waldo, and Prospect, Ohio. Later Sammons and Denny dissolved and divided their business. Petitioner acquired other outdoor advertising businesses, paying therefor largely from the earnings thereof. He conducted business as T. R. Sammons Outdoor Advertising Co. In 1932 he entered a partnership agreement, as to his outdoor business at Bucyrus and Gallion, Ohio, with Elmer Eckert, formerly his employee. Eckert acquired a 49 per cent interest in those businesses, paying $1,000 down and agreeing to pay the balance from the business earnings. *213 Petitioner reserved complete control and management of the business, Eckert continuing to work as an employee, though entitled to his pro rata share of the profits. This arrangement continued until November 1, 1940. Prior to November 1922, petitioner and his wife had lived in Cleveland, Ohio. He had been on the road with the advertising department of Ringling Brothers Circus. After the formation of the partnership with Denny and purchase of the business, petitioner and his wife moved to Washington Court House, Ohio, where headquarters were set up. They lived in furnished rooms, shared with another couple. The billposting was done only by Denny and petitioner. Later petitioner's wife sometimes went with him on his work. Many times while he scraped paper from billboards she picked it up and burned it. His wife preferred to go with him rather than spend the day in the furnished rooms. He considered her judgment as to locations for billboards as very good. Location is very important. Her attention to that matter has continued from before November 1, 1940, to now. After about three years petitioner had a nervous breakdown and had to go to a hospital. While he was there, his wife ran the *214 business, and purchased a plant at Circleville, Ohio. The purchase was on time, to be paid for over a period of about one year. She consulted with petitioner about the matter, but paid $1,000 more than he had agreed on. Later, Eckert wished to purchase a larger interest, but petitioner told him that because he, petitioner, still owed money, and because he considered his wife as having an interest, he did not wish to make any more partnership arrangements until he could get the business in shape where she had what she was entitled to. Petitioner talked over the matter of giving Eckert a larger interest, with a friend, a Mr. Zimmer. About February 1934 he told Zimmer he considered his wife a partner. Mrs. Sammons was present. Nothing was said then about taxes. Petitioner told his accountant about a year before November 1, 1940, that he had in mind a partnership with his wife. On November 1, 1940, petitioner and his wife executed an instrument in writing. In substance and pertinent part it provided: That the petitioner was the owner of certain (named) poster plants, and 51 per cent of a plant in the Bucyrus district, of which Bucyrus district plant E. A. Eckert was owner of 49 per *215 cent; that the petitioner sold to his wife an undivided one-half interest in all his interest in said plants and property (except certain automobiles and/or trucks and real estate used in connection with the business) in consideration of $31,000, payable $5,000 annually out of the earnings of the parties, with interest at 6 per cent; that upon full payment the contract was to operate as a bill of sale for the property; that from that date the parties were to constitute a partnership; that petitioner would permit continued use of his automobiles, trucks and real estate by the partnership, all taxes, insurance, repairs and necessary improvement to real estate to be paid by the partnership, and no rent to be charged the partnership; that the partnership would pay all costs and expenses of upkeep of property; that petitioner should have exclusive charge and control in management of the business, including employing and discharging all help, and making all contracts without any conference, advice, or consent of his wife; that petitioner would have sole authority to receive and receipt for money and to draw checks, buy material and supplies, pledge the credit of the partnership, and to control *216 the books and accounts (subject to inspection by his wife at all reasonable times); that each party should be chargeable with one-half of all bills and debts and receive one-half of the net profits; that the petitioner should report to his wife on November 1 of each year as to all transactions, and at such time account for the net profits; that petitioner would devote all of his time to the business; and that the partnership should continue until terminated by the parties or by operation of law. He charged his wife book value of the business. An inventory or balance sheet was compiled to determine the value of physical assets, showing them with a value of about $62,400. Good will was not considered in setting the price in the partnership contract. The figure of $62,400 was exclusive of real estate, automobiles and trucks. The $31,000 had not been completely paid out at date of trial. The "Investment Account" of Rhea V. Sammons on the "partnership" books carries the following notation: Under the terms of a partnership agreement dated 11-1-40 when credits to this account from paid in capital or accumulated earnings aggregate $31,000.00 further credits of net profits will be subject *217 to withdrawal. Eckert was advised of the partnership arrangement. He did not sign the agreement. Petitioner had rather poor health, having to go to a doctor in Detroit about every 90 days. He felt that his health necessitated some one to carry on the business, and that his wife would be in a position to do it better if she was considered a half owner. She had no income of her own. All she had was what he had given her from the business. Shortly before November 1, 1940, his wife had an allowance of about $150 a month; after that she had an allowance of $50 a week for personal expenses. His wife did not give him any promissory note for the purchase of the partnership interest, and paid no interest. Whatever was collected was by bookkeeping entries. She still travels with him the way she always did. It has always been, from the beginning of the business, their custom to consult together over business affairs. The agreement of November 1, 1940, was drafted by petitioner's attorney, he being instructed to set it up on the same basis as petitioner's other purchases of businesses. Taxes did not enter the discussion. Petitioner's office is at Mansfield, Ohio. Three people are employed *218 in it. Opinion We are here presented with another question as to family partnership. The Commissioner has determined that the partnership income is that of the petitioner, and the petitioner has the burden of showing otherwise. That burden, in our opinion, has not been met, in the light of the recent decisions in (February 25, 1946), and (February 25, 1946). Though there is evidence that income taxes were not considered when the partnership matter was discussed by petitioner with his friend Zimmer, or with his accountant or attorney, we consider the evidence insufficient to establish reality of partnership between the husband and wife. The wife contributed nothing substantial in the way of services, and nothing she had not contributed prior to the agreement of partnership. Petitioner's asseverations that he had always considered her a partner are at marked variance with the fact that in the partnership agreement of November 1, 1940, he specifically reserved ownership in real estate, automobiles and trucks, contributing only their use to the partnership; they are also at variance *219 with the fact that she was charged $31,000 - for something which he says he considered her already owning. That the wife contributed no capital is clear from the evidence. In addition, the petitioner kept careful, complete and detailed control over the business, the writing of checks, the employment and discharge of employees, and making of all contracts. This exclusive control was to be "without any conference, advice, or consent" of the wife. She had no right to withdraw any profit until the $31,000 was paid. It had not been repaid in full at the time of trial. Under the tests suggested by the Tower and Lusthaus cases, we consider it clear that business was not being carried on as a partnership. Older cases cited are not determinative. We therefore hold that there has been no showing of error on the part of the Commissioner in including the "partnership" income in the gross income of the petitioner. Since the petitioner on brief agrees that such conclusion requires the inclusion of $125 income from bonds in that of the petitioner, and since there is no evidence whatever on the point, no error is found in the Commissioner's determination in that regard. Also, for lack of any evidence, *220 we approve the Commissioner's determination as to inclusion of $134 taxes in petitioner's deduction. Decision will be entered for the respondent. Footnotes
*. Corrected pursuant to Tax Court order dated May 1, 1946.↩